McKeown Trust.

Argued October 7, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

80

*Paul Ginsburg,* for appellant.

*Kenneth G. Jackson,* with him *Frank J. Gaffney,* and *Thorp, Reed & Armstrong,* for appellee.

*Harry F. Stambaugh,* for trustee.

OPINION BY MR. JUSTICE JONES, January 3, 1956:

Sara Jane McKeown, unmarried, created an irrevocable inter vivos trust on March 4, 1942, with herself as the primary beneficiary. She constituted the Commonwealth Trust Company of Pittsburgh her trustee and caused her securities to be turned over to it.

The trust agreement provided for the distribution of income as follows: "Out of the income of the Trust Fund, and, to the extent that it is necessary, out of the principal thereof, the Trustee shall pay the sum of One hundred fifty ($150.00) Dollars monthly to the Donor for and during the term of her natural life, or until the Trust Fund is by such payments entirely depleted. The Trustee in its sole discretion may use such additional amounts of the principal as it deems necessary or advisable to meet unusual expenses incurred by the Donor by reason of illness or other misfortune."

The trust agreement further provided that "Upon the death of the Donor, the Trustee shall distribute the remaining corpus of the Trust Fund to her child, or among her children, if she is survived by a child or children . . ." with a proviso for a continuation of the trust during the minority of any child of the settlor, if at the time of her death, a surviving child is under the age of twenty-one years. The agreement also provided for remainders over in the corpus to the settlor's sister, brother and mother (subject to a one-third to a husband) in the event of her dying without leaving a child to survive her.

For the first full calendar year of the trust (1943) the net income was $2,032.67 and thereafter rose no higher than $2,700 a year until 1947. In the years succeeding 1947 there was an increase in the annual net income until 1950 when it amounted to $5,020.99. For 1952 and 1953, the last calendar years prior to the initiation of the instant litigation by a petition for review, the annual net income was roundly $4,400 for each year. The trustee distributed, from time to time, to the life beneficiary income in excess of $1,800 a year, the aggregate of the required monthly payments to the life tenant.

In 1952, the trustee filed in the court below its first account of its administration of the trust, showing, of course, its distribution of income to the life tenant in excess of $1,800 a year. Subsequent to the creation of the trust, the settlor had married and, at the time the trustee filed its account, was the mother of a child. For the audit of the account, the court appointed a guardian and trustee ad litem for the minor child of the life beneficiary and for any unborn children, respectively.

The guardian filed a report in which he concluded that it was the settlor's implied intent to have her trustee accumulate and capitalize, as trust corpus, the income from the trust in excess of $150 per month; that such accumulation would not violate the Act of April 18, 1853, P. L. 503, 20 PS §3251, as amended; and recommended a decree accordingly which the learned auditing judge entered.

In dismissing the life tenant's subsequent petition for a review of the decree, the court below observed that a distinction is to be noted between a testamentary trust and an inter vivos trust on a question whether a direction for the accumulation of trust income violates the statute. In other words, an accumulation of

income for the life of the settlor of an inter vivos trust may be valid while an accumulation of trust income from a testamentary trust would be invalid. On this point, no appellate court decision of this State has been cited, but the opinion for the court below cites three lower court decisions in each of which it was held that an accumulation of income from an inter vivos trust during the life of the settlor does not violate the Act of 1853.[1] Logically, that should be all the more so where the settlor is herself the life beneficiary. However, it is unnecessary for us now to consider whether an accumulation of income for the settlor's life under the trust here involved would violate the statute. It may be assumed, *arguendo*, that such an accumulation would be valid. The important question here is whether the trust agreement implies an intent on the part of the settlor that the income in excess of $150 a month should be accumulated and capitalized as a part of the corpus of the trust. We fail to find any such intent.

If the settlor intended that the trustee should accumulate and capitalize trust income in excess of $1,800 a year, manifestly she left it entirely to inference. It is certain that she did not expressly so direct. The question, then, is whether the implications of the trust agreement, particularly in the light of the undisputed facts and circumstances attending its execution, warrant any such inference.

There is no basis for inferring that, at the time of the creation of the trust, disposition of an excess of income over the $150 monthly payments was in the settlor's contemplation. The securities which were to

---

[1] *Jane M. Dravo Trust*, 99 Pittsburgh Legal Journal 401; *Stackpole Trust*, 70 District & County Reports 20; and *Evans' Deed of Trust*, 87 Pittsburgh Legal Journal 83.

comprise the corpus were not then producing much more than $1,800 net a year. In fact, the opinion for the court below appears to accredit that "at the time the trust was created the net income did not yield $150.00 per month." The settlor evidently feared that the income might be insufficient to justify the $150 monthly payments to her and, for that reason, authorized the trustee to invade principal to make up any deficiency. And, so apprehensive was she that the authorized invasions of principal might entirely consume the corpus of the trust estate in her lifetime that she referred to the duration of the trust as being for "the term of her natural life, or until the Trust Fund is by such payments [of principal] entirely depleted." The settlor did not then have any children; in fact, she had not yet married. Why, in such circumstances, should it be inferred that she intended to build up the corpus of the trust by accumulations of income for the primary benefit of prospective issue who might never come into being? Furthermore, what she directed her trustee to distribute to her child or children after her death was "the remaining corpus"—not a corpus augmented by accumulations of income. Taken in conjunction with her earlier expressed recognition that the corpus might be consumed by the trustee's authorized invasions of principal for her benefit, her use of the word "remaining" in relation to the amount of the corpus possibly existing at the time of her death is highly significant. In the circumstances attending the settlor at the time of her execution of the trust agreement, it would be wholly unreasonable to infer that she intended to preclude herself for all time from enjoying the income from her own property in excess of a relatively modest amount.

The learned court below attached importance to the fact that the trust agreement provided that the trustee

should make the monthly payments to the settlor "out of income", the court adding that if the settlor "was to receive 'all the income' it would have been very easy to say so." But, "out of income" was obviously meant to refer to "all the income". Otherwise, the settlor would not have authorized the trustee in the same immediate connection to make the monthly payments to the settlor "out of the principal" of the trust "to the extent that it is necessary". Further, the court below adopted the guardian's argument that, when the settlor in the trust agreement authorized the trustee to expend for a minor child's maintenance and education "not only the net income" of his remainder interest in the trust but also so much of the principal as the trustee deemed advisable, the settlor thereby evidenced knowledge as to how to provide for the distribution of the entire net income of the trust. From that, the guardian and the court inferred that the settlor intended that the income of the trust in excess of $150 a month was to be accumulated and capitalized as a part of corpus during the settlor's lifetime. A more rational and realistic inference is that if the settlor had so intended, she would have expressly so provided.

The decisions of this court, which the guardian cites, are not in point on the question of an implied direction to accumulate the income of an inter vivos trust. *Eberly's Appeal,* 110 Pa. 95, 1 A. 330, *Neel's Estate,* 252 Pa. 394, 97 A. 502, and *Billings's Estate (No. 2),* 268 Pa. 71, 110 A. 768, are cited merely for the proposition that a direction to accumulate income from a trust may be found from implication as well as from express language. There is no doubt that that is so. Incidentally, in each of those cases, the implied direction to accumulate was held to violate the statute of 1853. The guardian has not found any appellate decision in this State sustaining an implied direction to

accumulate income from an inter vivos trust. In short, there is no decisional criteria as to what is sufficient to establish by implication a valid direction to accumulate income from an inter vivos trust. Suffice it to say that the implications relied upon for that purpose should at least be so persuasive as to leave no doubt of the settlor's intent in such regard. The meagre inferences which the guardian urges in the instant case fall far short of meeting that standard.

Decree reversed; costs to be borne by the trust.