## Parrish Trust

*Boyd L. Spahr, Jr.,* and *H. Ober Hess* and *Ballard, Spahr, Andrews & Ingersoll,* for accountant.

*James F. McMullan* and *Clark, Ladner, Fortenbaugh & Young* and *George D. Parrish, Clelland L. Mitchell* and *Milton A. Willment, Jr.,* for claimants.

SHOYER, J., February 7, 1961.—This trust arises under deed of trust of Morris L. Parrish dated April 16, 1925, whereby settlor transferred the property therein described to the accountant, in trust, to pay out of the net income $500 per month to Frances Devens Parrish for life, with provision that if income in his lifetime should be insufficient at any time, he would supply the deficiency, or if it should be insufficient at any time after his death, such deficiency should be paid out of principal, and with the further provision that any surplus income should be accumulated and added to principal, and, upon the death of the annuitant, to distribute the balance remaining in trust to such persons, and for such estates, as settlor by will might limit and appoint.

The annuitant, Frances Devens Parrish, survives, and the trust continues.

Settlor died a resident of New Jersey on July 8, 1944, leaving a will dated February 23, 1943, by item

four of which he expressly exercised the power reserved in the deed and appointed the balance remaining in trust at the death of the annuitant to the trustee named in the deed in further trust to pay the net income therefrom 40 percent to Cuthbert Parrish, 40 percent to Ethel Parrish and the remaining 20 percent of the income to his niece, Alice R. Turner, and provided that upon the death of any of the named income beneficiaries, the principal from which such beneficiary had received the income should be paid to the Endowment Fund of the Philadelphia Club until such payments totaled $50,000, and that thereafter the balance of principal upon the termination of the life estates should be distributed to the trustee of settlor's residuary estate for the uses and purposes set forth in settlor's will.

By item six of the will, settlor gave the residue of his estate to the trustee named therein, in trust, to pay the net income therefrom one half to his nephew, Cuthbert Parrish, and the other one half to his nephew, Hugh Roberts Parrish, for their respective lives, and, upon the death of either nephew, to distribute such share of principal to the children of such deceased nephew and to the issue of any deceased child, per stirpes.

It is stated that settlor's niece, Alice R. Turner, one of the beneficiaries appointed to receive a share of income under the deed after the death of the annuitant, died on February 16, 1956.

Cuthbert Parrish and Ethel Parrish, the other beneficiaries appointed to receive income under the deed, survive.

As to the beneficiaries of income under settlor's residuary trust, Cuthbert Parrish, entitled to one half thereof, survives, but Hugh Roberts Parrish, entitled to the other one half, died a resident of Chester County,

Pa., on March 5, 1956, leaving to survive him three children, Hugh M. Parrish, Cynthia Parrish Black and Lucy W. Parrish, and it is stated that the principal of such share of residue was distributed to the children as provided in settlor's will.

The account was filed to enable the accountant to submit for determination (a) whether settlor's direction to accumulate surplus income is invalid, and, if so, (b) to whom are such accumulations distributable? Accountant has submitted a calculation (hereto annexed) which shows that, of the net income accumulated, $16,146.52 arose in settlor's lifetime and $21,-606.79 arose after his death.

Since the trust was created in 1925, the provisions of the Estates Act of April 24, 1947, P. L. 100, which applies only to conveyances effective on or after January 1, 1948, are not applicable.

The applicable statute is the Act of April 18, 1853, P. L. 503, 20 PS §3251, of which the pertinent provisions are as follows:

"No person . . . shall, after the passing of this act, by any deed, . . . settle, or dispose of any . . . property, so and in such manner that the [income] thereof, shall be wholly or partially accumulated for any longer term than the life . . . of any such grantor . . . and the term of twenty-one years from the death of any such grantor, . . . that is to say, only after such decease during the minority . . . of any person . . . who, under the uses and trusts of the deed, . . . directing such accumulation, would, for the time being, if of full age, be entitled to the [income] so directed to accumulate, and in every case where any accumulation shall be directed otherwise . . ., such direction shall be null and void insofar as it shall exceed the limits of this act, and the [income] so directed to be accumulated contrary to the provisions of this act, shall go to and be received by such person or persons

as would have been entitled thereto if such accumulation had not been directed." Section 9.

The deed provides that the trustee shall apply the income (a) to the payment of all taxes and reasonable and proper expenses, charges and commissions, (b) to the payment of $500 on the first day of each month beginning May 1, 1925, to Frances Devens Parish so long as she shall live, and (c) "to retain any surplus income remaining in the trust . . ." and that "such accumulations of income so remaining shall be treated as 'principal' and shall be invested and disposed of as such as herein provided."

The annuitant, Frances Devens Parrish, claims the accumulations. She contends that the deed expressly provides that the primary purpose of the trust was to produce for her a *minimum* income of $6,000 annually, and that it must, therefore, be inferred from such language that settlor intended that she should receive all the income. No such language, however, appears in the deed. Settlor placed nonlegal investments in the trust, and in paragraph four of the deed he states: "It is recognized that the primary object of this trust is to produce a minimum income of $6000 per annum, and that the corpus of the trust is not, and probably will not be sufficient at any time to produce that income if invested in the class of securities designated by law as proper investments for trustees."

He then proceeded to declare that any change in investments should be made with the intention of reinvesting the funds in securities of the same general nature (nonlegal) as those placed in trust by him. In other words, all that settlor declared was that, since nonlegals were placed in the trust originally to produce a minimum income of $6,000 annually, any reinvestments of principal likewise should be in nonlegals. Such a provision furnishes no basis for an inference

that settlor intended that the annuitant should receive all the income should it exceed $6,000 per annum. Contrary to any such intention is settlor's express direction in paragraph 1(c) of the deed that the trustee shall retain any surplus income, and that such accumulations shall be treated as principal. While an invalid direction to accumulate may be ignored in disposing of unlawful accumulations, it does not follow that the direction must be ignored in ascertaining settlor's intention. Settlor clearly provided that the annuitant was to receive $6,000 per annum, to be paid to her in specific installments of $500 per month, and there is no language in the deed from which it can be inferred that she was to receive either more or less than the amount specified. The fact that this deed was executed contemporaneously with a separation agreement, as recited in the preamble, is additional evidence that settlor was seeking only to discharge a financial obligation which he owed the wife cestui que trust, not to assume the role of a benefactor.

As I construe the language of the deed, Frances Devens Parrish is entitled to receive out of income $6,000 per annum in monthly payments of $500 each, neither more nor less, and her claim to any portion of the accumulated income is dismissed.

As respects income accumulated in settlor's lifetime, the accountant suggests that settlor's direction to accumulate is invalid and proposes that such income should be capitalized and awarded to the trustee of residue under settlor's will as an asset of decedent's estate. The income beneficiaries of settlor's residuary trust (Cuthbert Parrish, who survives, and the children of Hugh Roberts Parrish in their father's right) claim as income all the accumulations without distinction between those which arose in settlor's lifetime and those which arose after his death.

Accumulation of trust income during the lifetime of the settlor is not forbidden by the statute. In McKeown Trust, 384 Pa. 79, 81, the court comments, without deciding, that "an accumulation of income for the life of the settlor of an inter vivos trust may be valid while an accumulation of trust income from a testamentary trust would be invalid. On this point, no appellate court decision of this State has been cited, but the opinion for the court below cites three lower court decisions (Dravo Trust, 99 Pitts. L. J. 401; Stackpole Trust, 70 D. & C. 20; and Evans' Trust, 87 Pitts. L. J. 83) in each of which it was held that an accumulation of income from an inter vivos trust during the life of the settlor does not violate the Act of 1853." To these may be added Sinkler Trust, 3 D. & C. 2d 241.

In Stackpole Trust, supra, it was held, page 24:

"The total period during which accumulations are permissible is provided in the act to be 'the life or lives of any such . . . settler . . . and the term of twenty-one years from the death of any such . . . settler.' This clause is in the conjunctive, joining the settlor's lifetime with a term of 21- years from his death, thereby forming an entire period during which income may be lawfully accumulated. Therefore, if an accumulation is permissible during a life and 21 years thereafter, it logically follows that an accumulation is good during the life alone."

Nor is there any valid reason why a person should not be allowed to employ a trust to accomplish in his lifetime what he could undoubtedly effect without it. In Sinkler Trust, supra, page 247, Judge Lefever held:

"In plain language, this statute forbids accumulations 'for any longer term than the life . . . of . . . settler and the term of twenty-one years from the death of any such . . . settler.' A fortiori, the statute

does *not* prohibit accumulations during the lifetime of settlor."

In Evan's Deed of Trust, supra, the court said, page 84:

"There can be no more valid legal objections to [settlor's] plan for increasing her bounty to her child than if she had directed accumulation for herself or had directed others to do it for her. This grant, with the direction to accumulate and capitalize income for the benefit of her daughter, could not create in the lifetime of [settlor] the mischief which provoked the Thellusson Act or the Pennsylvania act [of 1853]. . . ."

If the direction to accumulate did not offend the statute with respect to income in settlor's lifetime, I see no logical reason why income lawfully accumulated should not be subject to the terms of the deed of trust and disposed of as principal in accordance with settlor's direction. As the auditing judge stated in Sinkler Trust, supra, page 252, which involved the accumulation of stock dividends, the accumulation "was the equivalent of adding to principal of the trust, which power settlor expressly reserved in the trust deed, . . ."

To award such accumulations to the trustee of settlor's residuary estate would deprive those appointed by settlor to receive the entire income after the annuitant's death, of the income from such accumulations. Such an award would do violence to the express direction in the deed and the terms of settlor's will.

Carson's Appeal, 99 Pa. 325, cited by the accountant, is not a binding authority because in that case the directed accumulation was for the benefit of a minor daughter, and, although the settlor died during her minority, the accumulation had to be paid her, nevertheless, because it had been accumulated *for her* in compliance with the language of the Act of 1853 as

construed in Washington's Estate, 75 Pa. 102. Here, as I have already decided, the accumulation was not *for* the wife beneficiary, which would have been invalid, but solely to protect her annuity. Not only the express language of the deed, but the fact that settlor calculated so closely that but $16,000 was accumulated as excess over a period of 19 years, proves conclusively that protection of the annuity was his motivating purpose.

True it is that settlor has not directed accumulation for his own lifetime only. The directions in 1 (c) are in general terms and consequently would continue for the duration of the trust. Termination of the trust is ordered "upon the death of the beneficiary," so inferentially the direction to accumulate is for the lifetime of the wife beneficiary. Under the express language of the Act of 1853, a direction for an unlawful accumulation is "null and void insofar as it shall exceed the limits of this act . . ." It is not *wholly* void. The intention of the settlor, insofar as it is not contrary to the statute, should be given effect: Leisenring's Estate, 237 Pa. 60; I Hunter, Orphans' Court Commonplace Book (2nd ed.) 39, Accumulations of Income, §7. Cf. Wheelock Estate, 21 D. & C. 2d 753, 762, affirmed per curiam, 401 Pa. 193.

Since settlor in his deed directed that such accumulations be added to principal in the inter vivos trust, they were not available to pass to the residuary trust as an asset of settlor's estate. In my opinion income accumulated in settlor's lifetime was validly accumulated and should be awarded in accordance with settlor's direction to the trustee of the inter vivos trust for the uses and purposes set forth in the deed as appointed by settlor's will. I find nothing in any of the cases cited which requires such income to be awarded otherwise than as directed by the settlor.

176 As to accumulations of surplus income after settlor's death on July 8, 1944, all agree that the settlor's direction contravenes the statute. Accountant proposes that these accumulations should be awarded as income to the income beneficiaries of settlor's residuary trust. I agree. Since these accumulations are invalid, they cannot be capitalized and added either to principal of the inter vivos trust, as settlor directed, or to principal of the residuary trust. To add such accumulations to principal of the residuary trust would accomplish indirectly what the statute forbids doing directly: Maris' Estate, 301 Pa. 20; White's Estate, 8 Dist. R. 33. Nor can such accumulations be distributed to the income beneficiaries of the inter vivos trust as appointed by settlor's will because they are not entitled to take until after the annuitant's death and they may not survive her: Howell's Estate, 180 Pa. 515. Having disposed of his entire estate by will no intestacy can result in settlor's estate. Surplus income accumulated after settlor's death became payable, as it accrued, to the income beneficiaries of the residuary trust, and should now be awarded to them: Howell's Estate, supra. . . .

And now, February 7, 1961, the account is confirmed nisi.