**Kessler Estate**

*Roland Fleer, Waters, Fleer, Cooper & Gallager,* for accountant.

*Henry Stuckert Miller,* for remaindermen.

*Walter Y. Anthony, McKinley & Anthony* and *Robert B. Brunner, Brunner, Conver & Glackin,* for life tenant.

## ADJUDICATION

TAXIS, P. J., October 24, 1968.—The trust was created by deed dated January 2, 1958. For her lifetime, settlor reserved to herself the right to require repayment of so much of the net income and principal of the trust as she might demand in writing. Settlor died on October 17, 1967, and her death is the event which gives rise to the filing of the first account. In article 6 of the deed, settlor gave her trustee "sole and uncontrollable discretion" to pay income and principal ". . . for the support, maintenance, benefit and comfort of: Primarily, Settlor's sister, Laura Kessler, for life; secondarily, Settlor's sister, Anna K. Schenk, and Settlor's sister-in-law, Nellie Kessler, for their respective lives." Settlor further provided that the trustee, again in his "sole uncontrollable discretion," should ". . . determine the proportions in which the net income from the trust is allocated among settlor's sisters and sister-in-law, or the survivors . . ." and ". . . to determine the amounts of principal to be paid to Settlor's sisters and sister-in-law or any of them . . ."

In article 7, settlor provided that after her death, ". . . Out of the principal of the trust then remaining and any accrued but undistributed income therefrom,

. . ." a certain charitable gift should be made, and then the "balance of principal and income then remaining" was given to settlor's nieces.

At settlor's death, Laura Kessler and Nellie Kessler were dead, leaving Anna K. Schenk the sole surviving life tenant. The trustee, in exercise of his discretion, has paid Anna K. Schenk $50 per month, in the absence of any ascertained need to make payments greater than this for her support, maintenance, benefit and comfort. Anna K. Schenk, however, claims the entire net income of the trust under the provisions of article 6. The interpretation of this language, therefore, has been submitted to the court for determination in this adjudication.

In such matters, the expressed intent of the settlor always rules as long as it is legal. Here, it is clear that settlor at no point gave any of the life tenants a fixed proportion of the income of the trust, except through the exercise of the discretion vested in her trustee. Anna K. Schenk contends, however, that this discretion is limited to the determination of the *proportions* in which the life tenants should share the income and since there is now but one life tenant, she becomes *entitled to all of it.* In support of this position, her counsel has advanced several arguments, which we will consider in order.

The first is that the language of article 6 (where the trustee is given discretion to determine the proportions in which the income is to be allocated among the life tenants) expresses an intention to distribute all income, at all times, to the named life tenants. However, reference to "the net income" in this sentence is neither logically nor linguistically inconsistent with the stronger and more precise language used earlier by the settlor in article 6, namely, "so much of the net income," in relating her gifts of income to the exercise of the trustee's discretion. The phrase "so much of"

appears in several other places in the trust instrument; the argument advanced would make these words surplusage here which is not a reasonable construction especially where they denote a concept (that is, all, nothing, or any amount in between) which could hardly be more neatly expressed.

Counsel for Anna K. Schenk next points to the language in article 6 which gives the trustee sole and uncontrollable discretion to "determine the amounts of principal to be paid, etc. . . . ," contending that a distinction should be drawn between the word "amounts" and the phrase "so much of," heretofore discussed. It is true that a difference in language presumptively indicates a different intent; but it does not follow from this minor difference in terminology that settlor meant to require all of the income to be currently distributed. Whatever difference between these two forms of expression settlor might have contemplated, neither one is the equivalent of "all of," which is the substance of this contention. In addition, the phrase "so much of" is applied by settlor to principal as well as income in the first sentence of article 6, which is the part thereof which makes the gifts of income to the life tenants.

The next contention is that Sterrett's Estate, 300 Pa. 116, applies to the present case, and rules it in favor of Anna K. Schenk. We think it is distinguishable. In that case, the gift was in trust ". . . to pay the net annual income to (three daughters) and the survivors and survivor of them, for and during their natural lives, in such amounts and proportions as (the trustee) may deem needful . . ." The gift was of "the net income," and no qualifying phrase such as "so much of" or any other limiting language was used. The Supreme Court held that the entire net income was distributable to the daughters, and that the trustee could only determine proportionate shares.

This holding is clearly proper, but the distinction between its language and the present case is such that it bears little on the present problem.

Counsel for Anna K. Schenk next turns his attention to the provision in article 7 that, after the death of settlor and the survivor of the life tenants, "out of the principal of the trust then remaining and any accrued but undistributed income, . . ." certain gifts to remaindermen shall be paid. By this, it seems probable that settlor contemplated the possibility of the accumulation of income by the trustees. It is argued, however, that "accrued" does not mean "accumulated," citing Winsor Estate, 11 D. & C. 2d 577, 7 Fiduc. Rep. 432, a case in this court. That case, however, dealt with the problem of the ownership of trust income received by the trustee or to which he had become irrevocably entitled prior to the death of a life tenant, but which had not been paid over to the life tenant before he died. That issue is remote from the present one, and for purposes here the case simply shows that there may be an overlap in the use of the terms "accrued" and "accumulated." Actually, the case held that income accrued before the life tenant's death is due his estate, and it is obvious that settlor here did not use it in that sense for the "accrued" income in her trust was specifically given to the remaindermen.

We think, therefore, that the clear intent of settlor was to give her trustee a broad discretion during the lifetime of Anna K. Schenk to control both the income and principal of the trust for her support, maintenance, benefit and comfort, but at the same time to give consideration to the interests of the respective remaindermen of the trust. There is no allegation of any abuse of this discretion. It is evident that settlor reposed a considerable amount of confidence in the ability of her trustee to provide for all of the objects of her bounty. There is no evidence that she intended to

impose the artificial limitation sought by Anna K. Schenk on his right to do this.

Two cases have been brought to our attention which may appear to reach a different result, but which, in fact, are considerably different from the present one. The first is McKeown Trust, 384 Pa. 79. There, an unmarried woman created an inter vivos trust in 1942, under which the trustee was to pay to her from income and, if necessary, principal, $150 per month for her life. At her death, the trustee was to ". . . distribute the remaining corpus . . ." to her children if any, otherwise to certain other relatives. Over ten or more years, the trust income increased to more than $4,000 annually, although the income initially was very close to the $1,800 which settlor kept for herself under the terms of the trust. The Supreme Court held that the settlor was entitled to all of the net income, regardless of amount, because in her deed she said nothing to create any inference that she specifically desired income in excess of $150 monthly to be accumulated and capitalized. Assuming, but not ruling, that such accumulation would have been valid, the court, nevertheless, held that under the circumstances existing when the settlor executed the trust agreement, and the fact that her gifts over referred to the "remaining corpus," no authorization to accumulate could be inferred; in short, the most reasonable overall construction of the whole agreement was to the effect that the settlor intended to keep all of the income, but at least $150 per month even if this required invasion of principal. It is evident that these facts differ greatly from the instant case.

In Jackson Estate, 15 D. & C. 2d 107, 8 Fiduc. Rep. 400, a 1949 testamentary trust required the trustees ". . . to use, in their uncontrolled discretion, the net income for the education, maintenance, and support . . ." of decedent's grandson until he became 25; at

this point, any accumulated income and the corpus of the trust were to be distributed to testatrix' children. Some but not all of the income was expended for the stated purposes and the issue was whether the grandson, at age 24, was entitled to the balance, or whether it was to be accumulated and go ultimately to the remaindermen. The Orphans' Court of Delaware County pointed out that the trustees were to expend "the" net income, not a "portion," "part" or "some" of it; further, the court found that the grandson was the principal object of testatrix' bounty, being the sole life tenant of the trust. Thus, in two important respects the case differs from the present one.

Moreover, the above cases were both decided when a more rigid rule against income accumulations applied than is now the case. In McKeown, supra, the court's holding avoided the need for any decision on this point, but an adverse finding as to accumulations might well have deprived the settlor of the fruits of her own property, and during her own lifetime. In Jackson Estate, supra, the trust was testamentary and not inter vivos, and it is almost certain that accumulations beyond the grandson's twenty-first birthday would have been improper under section 6 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.6, as it was then enacted. Presently, however, under the 1956 amendment to said section 6, we avoid this circumstance entirely, for accumulations are now permissible for the period of the rule against perpetuities. Hence, the claim of Anna K. Schenk to all of the net income of the trust is denied. . . .

And now, October 24, 1968, this adjudication is confirmed nisi.

### OPINION SUR EXCEPTIONS
### TO ADJUDICATION

TAXIS, P. J., February 13, 1969.—In an adjudication dated October 24, 1968, the claim of Anna K.

Schenk, surviving life tenant, to all of the net income of this trust was dismissed. Three exceptions to the adjudication have been filed, and will be considered in the order submitted.

The first contends that a proper interpretation of the language of the trust agreement would indicate that settlor intended to give all of the net income of the trust after her death to the three named life beneficiaries, of whom only Anna K. Schenk survived at that time. The governing language reads as follows:

"*Article 6.* After the death of the Settlor the Trustee shall pay so much of the net income from and so much of the principal then remaining as the Trustee in his sole and uncontrollable discretion may deem necessary or desirable for the support, maintenance, benefit and comfort of: Primarily, Settlor's sister, Laura Kessler, for life; secondarily, Settlor's sister, Anna K. Schenk, and Settlor's sister-in-law, Nellie Kessler, for their respective lives. The Trustee shall have the sole and uncontrollable discretion from time to time to determine the proportions in which the net income from the trust is allocated among Settlor's sisters and sister-in-law, or the survivors. The Trustee shall also have the sole and uncontrollable discretion from time to time to determine the amounts of principal to be paid to Settlor's sisters and sister-in-law, or any of them.

"*Article 7.* After the death of the Settlor and of the survivor of Settlor's said sisters and sister-in-law the trust shall terminate.

"(1) Out of the principal of the trust then remaining and the accrued but undistributed income therefrom, the Trustee shall first pay . . ." (then follow gifts not involved here.)

Relying on the second sentence of article 6, claimant contends that reference to the right of the trustee to determine "the proportions in which the net income"

is to be allocated limits his determination to how much of all of the net income each of the life tenants shall receive, and that when the number of such life tenants is reduced to one, that one becomes entitled to all of the net income. Claimant argues that the first sentence of article 6 deals with both income and principal and, hence, is general in nature and does not completely spell out the limits of trustee's discretion; further, that the use of different language in the third sentence (referring not to "proportions" but "amounts" of principal) shows settlor's mode of expression where she intended a discretion not to pay anything if the trustee so determined.

In making these distinctions, we think claimant loses sight of the fact that the actual gifts of income and principal to Laura Kessler, Anna K. Schenk and Nellie Kessler are contained in the first sentence. The clear language of that sentence gives "so much of the net income" as the trustee in his sole and uncontrollable discretion may deem necessary or desirable. While the second and third sentences elaborate upon and clarify the trustee's duties, they do not add to the size or nature of the gift previously made, and together amount to an unqualified declaration that the trustee is to determine in his wisdom how many dollars from income or from principal shall be paid to each beneficiary. We agree with claimant that related provisions must all be read together, and should not be isolated from each other: Dinkey Estate, 403 Pa. 179. But counsel for claimant does just that in his brief, when he purports to give each of the three sentences in article 6 an independent meaning and purpose, without any reference to the rest of the article. We do not see how claimant's interpretation of the second sentence, that it limits trustee's previously broadly stated discretion as to the payment of income, can be reconciled with the clear terms of the gift as

initially made. The first exception must be dismissed.

The second exception contends that our decision conflicts with the reported decisions of other courts. A number of these were discussed in the adjudication; nothing has since been advanced by claimant to convince us to change our position as there set forth. Nor is it necessary to restate what has already been said about the distinctions, if any, between the words "accrued" and "accumulated," for present purposes, for the decision does not depend in any way upon the technical accuracy or inaccuracy of the use of the word "accrued" in the trust agreement. We think that the intent of the settlor to make a gift of only some of the net income to the life tenants (if the trustee should in his discretion so determine) is sufficiently clear to permit accumulation and ultimate distribution of the balance as principal, and the disposition of principal in later articles of the trust agreement would encompass any capitalized income, whether it was specifically referred to or not. Any inference which could be drawn from the inclusion of the word "accrued" and the exclusion of "accumulated" would be too tenuous to counter the clear meaning of the settlor as expressed in article 6. The second exception is dismissed.

The third exception, in effect, contends that Anna K. Schenk has a clearly demonstrated need for larger payments than $50 per month. The trustee paid her this amount for about eight months after settlor's death, then discontinued all payments. Actually, we are very doubtful that this exception is properly brought, as its subject matter was not involved in the original claim, nor have any facts been put into the record which would justify any review of the trustee's decisions in detail. Absent the creation of the instant trust, Anna K. Schenk would have no claim to any portion of her sister's bounty, regardless of need, and

we are further mindful that the trustee has "full and uncontrollable discretion" to determine how both income and principal are to be paid out. Since we evidently lack the necessary record to support this exception, it must be dismissed.

We do note certain information from the account, however. The period of the account covers just less than 10 years, from the inception of the trust to the death of the settlor. Income receipts over that period totaled approximately $54,700. Taxes and administration expenses counsumed some $5,100 of this; an additional $34,000 was distributed to the settlor; leaving about $15,600 to be transferred to principal. The net income for 1966 (the last full year covered by the account) was approximately $5,300, before any distribution. During her life, settlor required distribution to her of the major part of the net income (in 1966, $4,-700). This is some indication of her requirements, and Anna K. Schenk is her contemporary. In addition, settlor cared sufficiently for the good of the life tenants to allow her trustee (we repeat, *allow*, not require) not only to exhaust the income for their benefit, but to invade principal. While the trustee's discretion is about as broad and unconfined as a discretion can be, it is, nonetheless, a discretion and not an absolute power, and it must be exercised to achieve, insofar as possible, all of settlor's ends, including the "support, maintenance, benefit and comfort" of Anna K. Schenk. We earnestly suggest that the trustee examine the determination he has made in this matter, to be as certain as possible that the present pattern of distribution is in keeping with the desires of the settlor and the purposes of the trust.