483 A.2d 919

In the Matter of the ESTATE OF J. William KREBS.

Appeal of Delores M. GEBHART.

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed Oct. 26, 1984.

Larry W. Wolf, Hanover, for appellant.

Keith R. Nonemaker, Hanover, for Trustee, participating party.

Michael E. Dows, Hanover, for Minor Children, participating party.

Bartholomew J. DeLuca, Jr., Harrisburg, for 3rd Contingent, participating party.

Daniel M. Frey, Hanover, for Hanover & Trust, participating party.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

The issues on appeal are (1) whether the settlor evidenced an intention to accumulate the income in one trust and (2) whether his purpose for a second trust has become impractical or impossible of fulfillment. For the reasons set forth below, we reverse in part and affirm in part.

On March 7, 1964, the settlor created an inter vivos trust known as the "J. William Krebs Trust No. 2," (Trust No. 2) which authorized appellee, the Bank of Hanover and Trust Company, as trustee to "pay over and distribute the income and principal" in the amount of $5,000 annually (beginning January, 1965) to appellant, the settlor's daughter. The trust provides that, upon appellant's death, the "Trust Estate" is to be divided into equal shares and distributed among appellant's surviving children, with sub-shares going to the issue of any deceased children. These shares are to be paid to the children or their issue upon their reaching the age of twenty-one; until such time, they are to be held in trust. In the event that appellant, her children, and their issue should all die before the trust is "exhausted," the trust principal is to be divided equally between two other

trusts, not here in question, created by the settlor. If either or both of those trusts are no longer in existence at the time of distribution, those shares which were to be distributed to them are to be divided equally among several charitable beneficiaries.

On March 1, 1968, approximately four years later, the settlor created the "J. William Krebs Trust No. 5," (Trust No. 5) which authorized a $2,500 annual payment to appellant "[f]rom and after January 1 of the calendar year next succeeding the year in which the 'J. WILLIAM KREBS Trust No. 2' shall have been *terminated....*" (Emphasis added). These payments, which are to continue for the life of appellant, are to be made from the trust income or, if the income proves insufficient, from the principal. Upon appellant's death, the "Trust Estate" is to be divided into equal shares among appellant's children, with each child taking upon reaching twenty-one years of age. Unlike Trust No. 2, however, the settlor did not make any provision for contingent remainders.

On August 13, 1981, appellant filed a petition in the orphans' court below seeking an order directing appellee to pay to her the earned and undistributed income of Trust No. 2 for the years 1976 to 1980, a sum of $18,696.23, and all income earned thereafter. The petition also sought to terminate Trust No. 5 on the ground that its purpose had become impossible or impractical of fulfillment and to direct that the proceeds therefrom be paid to appellant or that other appropriate relief be given. Appellant's eight children joined in the petition; a guardian ad litem consented to the joinder for three of the children who were under age twenty-one. A trustee ad litem was appointed for any unborn and unascertained remainder beneficiaries, and notice of the petition was given to the Attorney General of the Commonwealth on behalf of the contingent charitable remainder beneficiaries under Trust No. 2. Appellee, along with the trustee ad litem and the Attorney General, opposed the petition. On June 9, 1982, the lower court entered a decree nisi denying the relief requested by appellant; how-

ever, the court did modify the language of Trust No. 5 to provide that payments thereunder would begin after Trust No. 2 was "exhausted" rather than "terminated." Exceptions were timely filed and denied, and the decree nisi was entered as final on February 17, 1983. Appellant was granted leave to proceed in forma pauperis, and this appeal followed.

 We must first determine whether appellant is entitled to the excess accumulated income of Trust No. 2. In interpreting a trust instrument, "[t]he intent of the settlor, if not contrary to law, must prevail." *Matter of Tracy*, 464 Pa. 300, 304, 346 A.2d 750, 752 (1975) (footnote omitted).

> [This intent] is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument. Only if a settlor's intent cannot be ascertained with reasonable certainty will a court apply canons of construction, to attribute a reasonable intention to the settlor in the circumstances.

*Farmers Trust Co. v. Bashore*, 498 Pa. 146, 150, 445 A.2d 492, 494 (1982).[1] "[U]nless a settlor clearly demonstrate[s] his intent to accumulate income, trust income *in excess of specified payments* [is] to be distributed to income beneficiaries." *Stephens v. Lewistown Trust Co.*, 481 Pa. 194, 199, 392 A.2d 313, 316 (1978) (emphasis added). Before a court can find an intent on the settlor's part to accumulate income, "[t]he implications relied upon for that purpose should at least be so persuasive *as to leave no doubt* of the settlor's intent in such regard." *McKeown Trust*, 384 Pa. 79, 85, 119 A.2d 76, 78 (1956) (emphasis added). "All income, after payment of expenses properly chargeable to it, shall be paid and delivered to the tenant or retained by him, if already in his possession, *or held for accumulation, where legally so directed by the terms of the transaction by which the principal was established ....*" 20 Pa.C.S.A.

---

1. "The intention of the settlor at the time of the creation of the trust may ... be shown by facts occurring after [the time of the creation of the trust] to the extent that evidence of such facts is admissible to show such intention under the rules of evidence." Restatement (Second) of Trusts § 4 comment a (1959).

§ 8103(c) (emphasis added); *see also* Restatement (Second) of Trusts § 233(1)(a) comment p (1959).

In *McKeown Trust, supra,* the settlor created an irrevocable trust with herself as the primary beneficiary. She was to receive $150 a month, payable out of income and, if necessary, principal. Finding no express intent on her part to accumulate income, our Supreme Court held that the excess income was to be distributed to her. In so holding, the Court found the following factors to be important: (1) the settlor feared that the trust would be depleted, thereby forcing her to authorize invasions of the principal; (2) the remaindermen, her children, were not yet born and, thus, there was little reason to accumulate income; and (3) the remainderman were to receive " 'the remaining corpus'— not a corpus augmented by accumulations of income." 384 Pa. at 83, 119 A.2d at 77–78.

In *Stephens v. Lewistown Trust Co., supra,* the trust provided that its beneficiaries, the settlor's children, would receive quarterly payments of $300, payable out of income and principal, which were to continue until their full shares of income and principal (one-third to each of his three children) was fully paid. In holding that the beneficiaries were entitled to distribution of the accumulated income, our Supreme Court was impressed with several factors: (1) in several provisions of his will, the settlor indicated a desire to make available all of the benefits of the trust to the named beneficiaries, including a provision that payments be made out of the corpus, if necessary; (2) there was no express intent to accumulate income; and (3) the settlor did not provide for any remainder interest, thus depriving no named beneficiary of any benefits. 481 Pa. at 199–200, 392 A.2d at 316.

And in *In re Grater's Estate,* 1 Pa.Fiduc.2d 101 (Ct.C.P. Allegheny County 1981), the trust provided that the settlor's nephew was to receive $200 a month, payable from principal, if necessary; such payments were to continue until the principal was reduced to $10,000, at which time the nephew would receive the balance of the principal. The

court relied on *McKeown* and *Stephens* to find that, because there was no clear intent on the settlor's part to accumulate income, the nephew was entitled to the excess. Although a contingent charitable remainder was to receive the principal if the nephew died during the life of the trust or before the decedent, the trust said nothing about the remainder taking the principal and accumulated income. The court also found that the settlor was primarily concerned with insuring that the nephew was paid his monthly amount.

■ Similarly, in the instant case, the settlor has not manifested any clear intent to accumulate income. In Trust No. 2, he expressly authorized that payments to appellant were to be made out of the "income *and* principal." (Emphasis added). As the lower court found, his fear that Trust No. 2 would be depleted caused him to create Trust No. 5. *See* Lower Court Adjudication at 11. Under these circumstances, we find that the settlor did not intend to accumulate income.

Appellees [2] emphasize the fact that payments to appellant under Trust No. 2 were limited to $5,000. We note, however, that the beneficiary payments in *Stephens, McKeown,* and *Grater's Estate* were all for stated amounts. Furthermore, "a settlor's specification of periodic payments of specified sums establishes only minimum, not maximum, limits for distribution of trust income." *Stephens,* 481 Pa. at 200, 392 A.2d at 317 (citations omitted). Nor should the instant settlor's provision for remainders in Trust No. 2 demand a contrary result because there were also remainders provided for in the *McKeown* and *Grater's Estate* trusts. In any event, contrary to appellees' contention that the intent behind the remainder provisions must have been to accumulate income, we find an equally strong inference that the settlor simply wanted to provide for distribution of the remaining principal in the event that the trust did not exhaust. Appellees further argue that the settlor's use of

---

2. The Attorney General and the trustee ad litem also oppose appellant's request for relief, but the latter proceeded without filing a brief.

the words "Trust Estate," rather than "remaining corpus," *see McKeown, supra,* in referring to what is to be distributed upon appellant's death, indicates an intent on the settlor's part to accumulate income. While the words "Trust Estate" could arguably refer to both principal and income, they could also mean "whatever remains." [3] Thus, finding no clear intent on the settlor's part to accumulate trust income, we accordingly reverse that part of the lower court's order denying appellant's petition for payment of the excess income.

■ We next turn to the question of whether the purpose of Trust No. 5 has become impractical or impossible of fulfillment. Appellant sought to terminate Trust No. 5 under 20 Pa.C.S.A. § 6102(a), which states, in pertinent part, that:

> The court having jurisdiction of a trust heretofore or hereafter created, regardless of any spendthrift or similar provision therein, in its discretion may terminate such trust in whole or in part, or make an allowance from principal to one or more beneficiaries provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor, and notice is given to all parties in interest or to their duly appointed fiduciaries.

A trust will be terminated "where the impossibility ... is such that there is no sufficient reason for continuing the trust...." IV A. Scott, *The Law of Trusts* § 335 at 2650 (1967); *see also Day Estate,* 455 Pa. 610, 613–15, 317 A.2d 648, 650–51 (1974). Here, the parties apparently concur with the lower court's finding that the purpose of Trust No.

---

**3.** Appellees also contend that the trust's "no anticipation" clause is evidence of the settlor's intent to accumulate income. We find this contention meritless. Paragraph 5 of Trust No. 2 states, in part, that "[b]eneficiaries of this trust shall have no power of anticipation, alienation or assignment *of any income so to be paid to them...*" (Emphasis added). The clause's purpose is to protect the trust fund from creditors of the beneficiaries; it says nothing about income accumulation. Appellees' contention merely begs the question of *what* income is to be paid to the appellant-beneficiary.

5 was to provide a source of income for appellant in the event that Trust No. 2 became exhausted of funds. *See* Lower Court Adjudication at 10–11. Otherwise, if the word "terminated" in Trust No. 5 were read literally, appellant could never receive the annual $2,500 payments because they would begin when Trust No. 2 ended, that is, upon appellant's death. We agree with this construction. Although Trust No. 2 may not now appear to be in danger of exhaustion,[4] this does not mean that its fulfillment has become impractical or impossible. clearly, because Trust No. 5 was meant to be a "fallback" trust created for appellant's benefit, the settlor must have contemplated that it might *not* be necessary should Trust No. 2 prove sufficient to provide for appellant's needs during her lifetime. In that event, the proceeds would be distributed to the remaindermen, the settlor's grandchildren, upon appellant's death as provided for in the trust. Accordingly, we affirm the lower court's denial of appellant's petition to terminate Trust No. 5 on impossibility grounds.

■ Lastly, because we interpret the word "terminated" in Trust No. 5 to mean "exhausted," we find that the lower court's modification of the trust language was unnecessary and, accordingly, reverse that part of the order below. The lower court based its action "on the authority of" 20 Pa.C. S.A. § 6102(a), which provides for particularized remedies if the purpose of the settlor "cannot be carried out or is impractical of fulfillment." *See* Lower Court Adjudication at 13. However, because we have rejected the impracticality argument, it follows that § 6102(a) is inapplicable. "Words are to be interpreted according to their usual and generally accepted meaning *in the absence of a clear intent to the contrary.*" *Schellentrager v. Tradesmens National Bank and Trust Co.*, 370 Pa. 501, 504, 88 A.2d 773, 774 (1952) (emphasis added). Here, a clear intent that the settlor meant the word "terminated" to mean "exhaust-

---

**4.** The settlor died on November 9, 1970, leaving one-third of the residue of his estate to Trust No. 2. The market value of the trust as of January 1, 1981 was $118,704.07; it was originally created in the amount of $12,000, and the settlor increased that amount to $38,000 during his lifetime. As of February 28, 1981, Trust No. 5 was valued at $27,185.90.

644

ed" was shown. Therefore, we have interpreted the trust according to the intent of the settlor and find it unnecessary to reach the question of whether it was within the lower court's power to modify the trust language.

Reversed in part and affirmed in part.

Remanded for proceedings consistent with this opinion.

Jurisdiction is not retained.