490 A.2d 877

**Esther I. ABARBANEL, Appellant,**

**v.**

**Mark B. WEBER.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1984.

Filed March 22, 1985.

Thomas J. Profy, III, Bristol, for appellant.

Lisa J.G. Weikel, Perkasie, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from an Order sustaining appellee's preliminary objections in the nature of a demurrer to appel-

lant's petition for citation to file an accounting. After a careful review of the record and the arguments presented by both parties on appeal, we affirm in part, and reverse and remand in part for proceedings consistent with this Opinion.

The facts are as follows. Ian A. Abarbanel and Esther I. Abarbanel executed a guardianship agreement on May 22, 1977 with Mark B. Weber, Esq., as guardian-trustee.[1] The agreement conveyed an interest in a real estate partnership to Michelle Beth Abarbanel and Amy Lynn Abarbanel, the minor children of Ian and Esther Abarbanel. The agreement provided that:

> (b) the Guardian shall have all of the powers vested in him by law as set forth in the Probate Estates and Fiduciaries Code of the Commonwealth of Pennsylvania. Guardian in his sole discretion, after taking into consideration the natural guardian's [sic] abilities to furnish reasonable support in accordance with their station in life, shall have the right to pay principal and income to or on behalf of the said minors at such times and in such amounts as may be necessary for their maintenance, education and support. Guardian shall also have the right to pay principal and income for such other necessary incidental expenses of such minors until they shall arrive at the age of twenty-one years. Education shall be defined as public or private schooling, camping experiences, special lessons and training, whether the same shall be at the elementary, secondary, college or post college level.

Guardianship agreement, pp. 2–3. The above agreement, being very general, did not earmark a specific sum to be paid to the minors on a regular basis nor did it contain any language stating whether said agreement could be amended.

On November 27, 1979, the Abarbanels executed a post-nuptial agreement which provided for, inter alia, support and alimony payments. The post-nuptial agreement stated

1. Weber, the appellee, is a law partner of Ian A. Abarbanel.

the primary purpose of the previously created guardianship fund to be for the benefit of the children's future education and expenses as well as for present special educational expenses and experiences related thereto. Additionally, the post-nuptial agreement provided that Esther I. Abarbanel be paid the sum of $125 per month from the income of the guardianship fund for special schooling and lessons for the two children. Mark B. Weber, Esquire, guardian-trustee, executed a joinder and consent to the terms of the post-nuptial agreement.

On November 27, 1979, an Order for support was entered requiring Mr. Abarbanel to pay $775 per month for the support of his two minor children, and incorporating the terms of the post-nuptial agreement providing for distribution of $125.00 monthly income from the guardianship fund.

On or about March 3, 1981, Ian and Esther Abarbanel entered into a stipulation in a custody proceeding wherein the following amendment was made to the guardianship-trust fund distributions:

> Father shall have the right to utilize one-half of the trust fund distributions (up to $750.00) for day camp or other summer recreational activities, provided that father shall have at least five weeks temporary summer custody. Any amounts needed by father in excess of said amount shall be paid by father out of his own separate funds. The $750.00 shall therefore not be paid to mother but retained from January-June and distributed as above.

Stipulation, p. 2.

The record indicates that distributions from the guardianship account terminated in September 1981 when the Abarbanels could no longer agree on how to spend the money for their children's benefit. Appellee, the guardian-trustee, then determined, notwithstanding the post-nuptial agreement, support Order and stipulation, that rather than distribute the funds to either party, he would accumulate the funds for the children's college education.

On December 30, 1982, appellant filed a petition for citation to file an accounting alleging that appellee has

failed and refused to pay her the $125 a month for October through December, 1981 and for July through December, 1982. In response to said petition, the appellee filed preliminary objections in the nature of a demurrer on February 10, 1983 and submitted a supporting memorandum of law. Appellee contends that the appellant's petition for citation to file an accounting fails to aver that the children's present education is being hampered due to insufficient funds nor does it allege any specific instances of bad faith or abuse of discretion on the part of the appellee. Appellant, in response, submitted her Memorandum of Law in opposition to appellee's preliminary objections. In said memorandum, appellant specifically requested the court to schedule a hearing so that an appropriate record could be developed. However, the trial court, without holding a hearing, entered an Order on September 9, 1983, sustaining appellee's preliminary objections and dismissing appellant's petition for citation to file an accounting. This appeal followed.

Appellant contends that (1) the trial court's failure to receive evidence on the disputed factual issues raised by appellee's preliminary objections violated Pa.R.C.P. 1028(c); and (2) the May 22, 1977 guardianship agreement did not empower the appellee with the right to accumulate income.

Before addressing whether the appellee possessed the requisite authority to accumulate the income from the guardianship-trust fund, we must determine whether the lower court acted properly in sustaining the preliminary objections without receiving additional evidence. We begin our analysis by turning to Pa.R.C.P. 1028(c) which provides:

**Rule 1028. Preliminary objections**

. . . . .

(c) A party may file an amended pleading within ten (10) days after service of a copy of preliminary objections. The court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall take evidence by depositions or otherwise.

Pa.R.C.P. 1028(c), 42 Pa.C.S. However, as this Court has previously stated, "when no issues of fact are raised, the court shall dispose of the preliminary objections as a matter of law on the basis of the pleadings alone." *In re D.L.S.,* 278 Pa.Super. 446, 420 A.2d 625 (1980). *See also Northvue Water Co. v. Municipal Water & Sewer Authority,* 7 Pa.Commw. 141, 298 A.2d 677 (1972). Here, appellee's preliminary objections raise an issue of law (i.e., whether the appellee has the power to accumulate the income from the guardianship-trust fund) without raising any factual issues that would necessitate the taking of further evidence through interrogatories, depositions or otherwise. *In re D.L.S., supra.* Upon reviewing the record, we are not convinced that the trial judge needed more evidence to make a learned decision. In fact, the record discloses that Judge Mims had presided over the Abarbanels' domestic disputes for several years and was thoroughly familiar with their financial status. Thus, we conclude that the lower court acted properly in ruling on the preliminary objections without receiving additional evidence.

▪▪▪ Our inquiry now turns to the propriety of the lower court's Order which sustained the preliminary objections filed by the appellee. In considering preliminary objections in the nature of a demurrer, the following standard is applied:

It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343 (1959); *Byers v. Ward,* 368 Pa. 416, 84 A.2d 307 (1951). Conclusions of law and unjustified inferences are not admitted by the pleading. *Lerman v. Rudolph,* 413 Pa. 555, 198 A.2d 532 (1964). Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint

fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Rose v. Wissinger,* 294 Pa.Super. 265, 270, 439 A.2d 1193, 1196 (1982) (quoting *Sinn v. Burd,* 486 Pa. 146, 149–50, 404 A.2d 672, 673–74 (1979)).

In the instant case, there is no specific provision for the accumulation of income in the guardianship agreement; therefore, we must determine whether the power to accumulate can be inferred by being either "necessary or appropriate to carry out the terms of the trust." *Restatement (Second) of Trusts,* § 186.

■ Section 6106 of the Decedents, Estates and Fiduciaries Code, effective July 1, 1972, provides:

**§ 6106.  Income accumulations;  when valid**

(a) **General.**—No direction or authorization to accumulated income shall be void, except as herein provided.

(b) **Void accumulations;  exceptions.**—Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any direction or authorization to accumulate income shall be void.

20 Pa.C.S. § 6106.  In interpreting the above section, our appellate courts have consistently held that temporary accumulations of income, in the form of judicious management of a trust and providing for future contingencies within reasonable limits, are valid.  *See, e.g., In re Estate of Girt,* 452 Pa. 156, 305 A.2d 372 (1973); *In re Dwight's Estate,* 389 Pa. 520, 134 A.2d 45 (1957);  *In re Smith's Estate,* 385 Pa. 416, 123 A.2d 623 (1956); *Eberly's Appeal,* 110 Pa. 95, 1 A. 330 (1885).  Here, there is no perpetuities problem as the guardianship terminates upon each minor's attaining age twenty-one (21), with full distribution to be made at such times to the donees.  Thus, we find the reasoning of the above cases particularly applicable to the case before us.

■ Appellant relies on *Stephens v. Lewistown Trust Co.,* 481 Pa. 194, 392 A.2d 313 (1978) for the proposition that unless the settlor clearly demonstrates his intent to

accumulate income, the trust income in excess of specified payments is to be distributed to the income beneficiaries. *See also In re Estate of Krebs*, 334 Pa.Super. 635, 483 A.2d 919 (1984). The problem in *Stephens*, however, arose from the creation of a trust which produced more income than expected. In the instant case, the dispute regarding the accumulation stems from the Abarbanels' inability to agree on how the money should be spent. The guardianship agreement in the present case gives the appellee unfettered discretion, after taking into consideration the Abarbanels' financial capabilities, "to pay principal and income to or on behalf of the said minors at *such times* and in *such amounts* as *may* be necessary for their maintenance, education and support." (emphasis added) The inclusion of the above language clearly indicates that the money should be distributed only when it is necessary and thus, it implies that the trustee should accumulate the income during the period it is not needed. We emphasize that the language of the agreement confers broad discretion upon the appellee in managing the guardianship-trust account. As such, courts should not interfere with the guardian-trustee's management of the fund unless there is an abuse of discretion. *Restatement (Second) of Trusts*, § 187. In the present case, we agree with the lower court's conclusion that there is no evidence that the appellee has abused his discretion. Moreover, in exercising his discretion, the appellee determined that the accumulation of income would not impair the present educational, religious and cultural needs of the children.[2] Finally, we emphasize that the appellee must continue to provide annual reports to both parents, thus ensuring that he will continue to manage the fund in a reasonable and prudent fashion.

Although the lower court held that the appellee has the discretion to accumulate income, its decision is unclear as to whether the appellee must continue paying the appel-

**2.** The record discloses that appellant's entire "station in life" was explored and reviewed at length in support proceedings before Judge Mims in 1982, who reduced her support by $75.00 per month.

lant $125 per month pursuant to the November 27, 1979 support Order which incorporated the terms of the November 27, 1979 post-nuptial agreement. Such a result would limit the accumulation of income to an amount *over and above* the $125 per month set forth for the minors' special schooling and lessons. Because the lower court summarily concluded that the appellee has the right to accumulate income without discussing the appellee's legal obligation to pay $125 monthly to the appellant, we must remand this case for an evidentiary hearing to ascertain the intent of the parties. To the extent that the trial court finds that the parties intended to continue the $125 monthly payments, then the accumulation will be limited to the income above and over said monthly payment. On the other hand, if the trial court finds that the parties sought to use the proceeds of the guardianship fund to lessen their own support obligations, thereby benefiting themselves at the expense of their children, who are entitled to reasonable support commensurate with their parents' station in life, *see Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973), then the income should be accumulated in toto.[3] In any event, due to the ambiguity in the record regarding this matter, we must remand for an evidentiary hearing.

Accordingly, the decision of the trial court is affirmed insofar as it has held that the appellee has the discretion to

**3.** It has been a longstanding rule in this Commonwealth that a parent cannot bargain away a child's right to adequate support. *See, e.g., Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983); *Commonwealth ex rel. Snively v. Snively*, 206 Pa.Super. 278, 212 A.2d 905 (1965); *Commonwealth ex rel. Yeats v. Yeats*, 168 Pa.Super. 550, 79 A.2d 793 (1951); *Commonwealth ex rel. Rossi v. Rossi*, 161 Pa.Super. 86, 53 A.2d 887 (1947).

Moreover, in the recent case of *Sutliff v. Sutliff*, 339 Pa.Super. 523, 489 A.2d 764 (Opinion by Beck J., filed, 1985), this Court held that a wealthy parent could *not* utilize funds gifted to his children pursuant to the Pennsylvania Uniform Gifts to Minors Act, 20 Pa.C.S.A. § 5301 *et seq.* (hereinafter UMGA), in lieu of his legal obligation to provide his children with adequate support. While the instant case involves funds generated under a guardianship/trust fund and not funds gifted pursuant to the UMGA, we find the rationale of *Sutliff* to be applicable here.

accumulate income from the guardianship fund, and it is otherwise reversed and remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.