**Metzer v. Metzer**

418

*Thomas E. Coval,* for plaintiff.
*Alison Boothby Long,* for defendant.

RUBENSTEIN, *J.,* April 3, 2008—Father John A. Metzer and Mother Diane Pfeil Metzer both appeal from this court's order of January 14, 2008 ordering Mother to pay $608 per month for support of their two children, Jake, age 11, and Sean, age 7.

Mother and Father were divorced on October 25, 2006, and Father was awarded primary physical custody of the children. On July 26, 2007 Mother and Father signed a property settlement agreement which stated in part in paragraph 15 (Support) verbatim:

"Husband agrees to waive child support from Wife for the parties' minor children. This waiver is not to be interpreted as Husband waiving the children's right to child support; rather the waiver is due to contents (sic) of this agreement and Wife waiving payments she may be entitled to with regard to alimony and Husband's pension.

"Father agrees to maintain health coverage for the minor children and take care of all of their day-to-day needs with exception of their meals when they are with Mother." Exhibit M-1.

On September 10, 2007 Father filed a petition for child support. A support conference was conducted on October

23, 2007. After a hearing, the court determined that Father's monthly net income was $6,010.22 and Mother's was $1,351.37. An interim order was entered by Judge Susan Devlin Scott of this court ordering Mother to pay $464 per month in support and $20 in arrears. This support obligation was based upon a presumed reasonable child-care expense pursuant to Pa.R.C.P. 1910.16-6(a) of $165 per week.

Mother's net income was based upon her employment three days a week as a restaurant waitress, with a base pay of $2.83 gross per hour plus tips, which average $200 net per week, and $10 per hour gross as a hostess on Friday nights, plus unemployment compensation of $426 for the month of January when the restaurant is closed. A wage attachment was issued on October 29, 2007 to Mother's employer in accordance with this order. An order was also issued scheduling a further support hearing.

This support hearing was conducted on January 14, 2008. This court modified the prior order and directed Mother to pay $608 per month for the support of Sean and Jake and $50 per month upon any arrears. Health care insurance coverage was to be provided by Father and unreimbursed medical expenses exceeding $250 annually per child were to be allocated at 25 percent to Mother and 75 percent to Father. A wage attachment was also issued to Mother's employer pursuant to this order.

The following evidence was presented at the January 14, 2008 hearing:

Father resides in Furlong, Bucks County, Pennsylvania with the parties' two sons, Sean and Jake. Father is em-

ployed as an engineer program manager with the United States Naval Surface Warfare Center in Philadelphia. He leaves for work at 5:30 a.m. and returns home "sometime between 4 and 5 o'clock." N.T. January 14, 2008, pp. 4, 8.

Father has employed an "au pair" since September 2006 to help with the care of his two sons. Father testified that the au pair provides care "the entire day" when the children are off from school. Pursuant to her contract with Father, the au pair can provide up to 45 hours of child care per week. Her duties include preparing the children for school, picking them up at the school bus and helping with their homework. Father testified that after considering the cost of the before and after school daycare provided by the Central Bucks Community School, he concluded "[t]hat I'm getting my best value with the au pair agency and the most coverage." N.T. January 14, 2008, pp. 7-13.

In addition to preparing the children for the arrival of the school bus at 8:20 a.m., the au pair also does housework and laundry, but only for the children. N.T. January 14, 2008, pp. 19-20, 23.

Father testified that he cooks dinner and does the grocery shopping but provides the au pair with a Ford Taurus to run errands. Father testified that as long as she completes her duties, the au pair is essentially free to do as she wishes during the time the children are in school. Father testified that in accordance with State Department requirements for a visa, the au pair attends three credit hours each semester at Bucks County Community College. Father testified that he paid a total of $18,535 for

au pair services for 2006-2007 which he was seeking to include as reasonable child care expenses in the child support calculations. N.T. January 14, 2008, pp. 19-25.

Father admitted that he receives six weeks of paid vacation per year. He has worked for the government for 25 years, and has been paying into the Civil Service Retirement System during that time. He earns approximately $100,000 per year. Father agreed that the cost for full-time before and after-school care through the Central Bucks Community School would be $490 per month for both sons. Father testified that he has primary custody of their sons, and admitted that he had told Mother that he would "spend every penny he had" fighting Mother for custody of the children. N.T. January 14, 2008, pp. 25-32.

Father testified that his "core" work hours are "from 9 in the morning until 3 in the afternoon," but he chooses to leave for work at 5:30 a.m. to avoid "traffic at a bad time." N.T. January 14, 2008, pp. 41-42.

Father testified that he "occasionally has some cash flow issues" and that was why he was seeking support from Mother. Father testified that he recently spent $35,000 renovating his house, which included the installation of a cathedral ceiling, a bathroom renovation and replacement of windows and exterior siding. N.T. January 14, 2008, p. 46.

Father testified that Mother is a waitress at the Inn at Phillips Mill in New Hope, Bucks County. He related that she had been previously employed by the "Defense Printing Service" earning $40,000 to $50,000 per year. Father admitted that Mother left that job "because we

felt it was important for one parent to be home to raise our children." He believed that she was capable of resuming that employment because "she still has the same qualifications and skill set." N.T. January 14, 2008, pp. 14-16.

Father estimated that Mother earns $529 per night in tips as a waitress. He derived his estimate as follows: Father reviewed the menu from the Inn at Phillips Mill which he obtained from the Internet. After carefully examining that menu, (including their offering of "les hors d'oeuvres," "les salades," "soupe du jour," "les entrees," and "les desserts"), Father extrapolated that the average price of an appetizer, soup, salad, entree, dessert and coffee was $49 per person. He further assumed that the average number of patrons per table was three, and that during four and one-half hours per evening Mother was able to wait on four tables per hour, thus serving approximately 54 customers per evening. Based upon these assumptions, all of which are contained in Father's self-designed chart (exhibit F-7), Father calculated that the "total take" per evening was $2,646. Utilizing this figure, Father further estimated that a 20 percent gratuity based upon this "total take" would average $529.20 per evening. N.T. January 14, 2008, pp. 16-18; exhibit F-7.

Mother testified that in October 2007 she purchased a house in Doylestown, Bucks County, Pennsylvania for $284,500. In order to qualify for the mortgage loan of $209,500, for which she makes monthly payments of $1,553.47, Mother stated that she was advised by the loan officer to indicate earnings of $4,166 per month, an amount which the loan officer filled in on her loan application. N.T. January 14, 2008, pp. 54-58.

Mother testified that she had received $125,000 from the marital property settlement for the "buy-out" of her share of the marital residence and $10,000 for the "equitable distribution of the vehicles." She testified that she used $75,000 for a down payment on her new house and the remainder to pay off her car and "subsidize her living." N.T. January 14, 2008, pp. 59-60.

Mother further testified that she works part-time (approximately four days per week) as a waitress and hostess at the Inn at Phillips Mill and earns $2.83 per hour plus tips as a waitress and $10 per hour as a hostess. The waitstaff "pools" the tips which equate to approximately 10 percent of the gross of the restaurant each day. Mother admitted that some of her tip income is not reflected in her pay stubs, and estimated that she earns "between 16 and 18 percent" of "the sales" in tips. N.T. January 14, 2008, pp. 60-63.

Mother testified that she does not receive any alimony and did not receive a share of Father's pension in her divorce settlement. Mother utilizes the proceeds of her property settlement to assist her in paying her mortgage and other household expenses. Mother stated she began paying child support in November 2007 upon receipt of a letter from the court of common pleas directing her to do so. N.T. January 14, 2008, pp. 64-68.

Mother testified that she had worked for the "Defense Automated Printing Service" but left in 1999 to raise her son and "extend our family." Mother testified that after September 11, 2001 many of her prior government/administrative functions had been outsourced to private contractors. Mother stated that when she left her job

after 14 years with the defense agency she had been earning $36,000 to $38,000 per year. N.T. January 14, 2008, pp. 68-69, 71-72.

In 2001, Mother began work as a waitress at Giuseppe's Restaurant in Richboro, Bucks County. Mother stated that she attended a trade school in 2005 and obtained a "cosmetician license" but has never worked as a cosmetician. N.T. January 14, 2008, pp. 69-70.

Mother testified that she agreed to waive her right to alimony "because it was a trade for the child support." She confirmed that Father had threatened to "spend every penny to fight her for custody" and stated that Father would not consent to the divorce if she sought alimony or a portion of his pension. Mother admitted that she was not coerced into signing the marital property settlement, and agreed that she does not declare all of her income to the Internal Revenue Service. She testified that she has not applied for any full-time employment because she believed that she did not have to pay child support and likes her current job where she intends to assume additional hours. She admitted that she could work full-time, and estimated her hourly wage rate including tip income was $14.93 per hour. N.T. January 14, 2008, pp. 73-85.

Mother testified that she has partial custody of her sons every Tuesday evening and every other weekend from Friday at 5 o'clock until Sunday at 3 o'clock. N.T. January 14, 2008, pp.78-79.

Natalie Haritonow, a German citizen, testified that she has been employed as an au pair by Father for the children, Jake and Sean, since September 2006. She testified that she wakes the children at 7 a.m., prepares their

breakfast and lunch, and either drives or walks them to the bus stop or school which begins at 8:30 a.m. Haritonow testified that her duties include cleaning, washing dishes, doing the children's laundry and helping Father with the food shopping. She picks up the children from school in the afternoon and makes snacks and helps them with their homework. She testified that Father arrives home from work at approximately 5 p.m. and that he prepares dinner. N.T. January 14, 2008, pp. 88-92.

Haritonow also attends one three-credit class at Bucks County Community College per semester. She is paid $165 per week in cash by Father for these duties. Her automobile insurance is provided by her au pair agency. She has a separate bedroom in Father's house and Father provides her food. N.T. January 14, 2008, pp. 92, 95.

Janet Kratzke testified that she is an independent contractor for "Au Pair America." As a "senior counselor" she supervises 48 "au pairs that are in my cluster" including Natalie Haritonow. Kratzke testified that reasonable estimates for Father's au pair expenses include: $2,400 for room and board, $600 per year for auto insurance, $500 for tuition assistance, $7,800 for an annual stipend for the au pair, $170 per year transportation costs, a one-time $350 program application fee, a "SEVIS" fee (a visa renewal charge) in 2006 of $35 and in 2007 of $198, and a $6,600 program fee. Kratzke testified that the au pair provides a maximum of 45 hours of child care per week or 10 hours per day, and that the au pair is "allowed to perform any duty that is child care related." N.T. January 14, 2008, pp. 105-11.

At the conclusion of this hearing, this court determined that Mother's net income was $2,050.15 per month. This conclusion was based upon full-time employment at 40 hours per week and an imputed wage of $15 per hour. Father's net income remained unchanged at $6,010.22 per month. The combined total monthly net income of $8,060.37 resulted in a basic child support obligation of $1,642. Mother's portion of that basic support obligation was determined to be $417.56, which was based upon her proportionate share of 25.43 percent of the combined total net income. Adjustments of $101.72 for child care expenses and $89.14 for health insurance premiums resulted in a total obligation to Mother of $608.42 per month. It is from this award that both parties appeal.

Father filed his notice of appeal from this court's order on February 8, 2008. On February 11, 2008 this court ordered Father to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Father filed his statement of matters complained of on appeal on February 29, 2008. On February 13, 2008 Mother filed her notice of appeal. On February 20, 2008 this court ordered Mother to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Mother filed her statement of matters complained of on appeal on March 12, 2008.

In his concise statement of matters complained of on appeal, which according to Father "is made in general terms because the court did not state the basis for its decision," Father asserts that the "court erred, abused its discretion and made a finding unsupported by the record" when it "failed to give full credit to the costs of the child care program provided through the nanny service,"

"failed to give proper credit for [Mother's] income," and "failed to find [Mother's] income to be in the amount she represented to be her income under penalty of federal law in her mortgage application and statement provided at settlement." Statement of matters complained of on appeal.

Mother asserts in her concise statement that the trial judge "erred in entering an order of child support against Mother when Father waived his right to child support in the parties' property settlement agreement, and when the children's needs were able to be met without entry of such an order," "erred by failing to consider Father's waiver of child support as a basis for deviating from the guidelines when the children are able to be adequately provided by Father," and "erred in assigning an earning capacity to [Mother] that is unsupported by the evidence of record." Statement of matters complained of on appeal.

It is well-established in the Commonwealth of Pennsylvania that:

"The applicable standard of review with respect to support awards is abuse of discretion; the amount of support awarded is largely within the sound discretion of the trial court. 'A finding that the court abused its discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.' Thus, this court may reverse the trial court's determination only if the court's order cannot be sustained on any valid ground." *Chapman-Rolle v. Rolle,*

893 A.2d 770, 773 (Pa. Super. 2006) (citing *Spahr v. Spahr,* 869 A.2d 548, 551 (Pa. Super. 2005)). (citations omitted)

"Hence, the calculation of a support order largely is within the discretion of the trial court." *Woskob v. Woskob,* 843 A.2d 1247, 1251 (Pa. Super. 2004).

In responding to Father's initial claim that this "court did not state the basis for its decision," we note that this court placed the following statement of record when we entered our order:

"We will note the presence of the parties and their counsel. I will enter an order, but I feel constrained to place at least of record some of the reasons for that order.

"I've read the case law provided by counsel and the memorandum provided by Husband's counsel. There is no serious issue as to Husband's income. We do however find, and the testimony confirms, that Wife is underemployed. We base our decision upon her working 40 hours per week at $15 per hour.

"We also find that while the child care expense with the au pair is certainly [a] quality child care expense, it does not meet the definition of [a] reasonable child care expense. It seems to be worth the money and it is money well spent because it's for the benefit of the children. But we do not believe that Wife should foot the entire bill for what we see as excessive.

"The children need child care. The au pair provides much more than that at a great cost. Father has the absolute right to spend whatever he wishes for the benefit

of his children. Wife is only responsible for the reasonable share based upon their respective incomes.

"We believe that the child care expenses which are fair and reasonable total $500 per month. Therefore, utilizing that number plus the agreed health care premiums, we enter the following order: Effective as of the filing date, Wife shall pay the sum of $608 per month for the support of the two children. This includes the health care premium, as well as reasonable child care. We'll also direct that any arrears occasioned by the order be paid at the additional rate of $50 per month.

"Husband and Wife are responsible in proportionate shares as follows: For any medical expenses which exceed the first $250 per child, 25 percent for Wife and 75 percent for Husband. That's all." N.T. January 14, 2008, pp. 134-36.

We address Father's next assertion that this court "failed to give full credit to the costs of the child care program provided through the nanny service," by noting that within this Commonwealth, child support is to be awarded pursuant to statewide guidelines established by general rule of the Supreme Court of Pennsylvania. See Pa.R.C.P. 1910.16-1; 23 Pa.C.S. §4322(a). "The support guidelines are to be considered both in entering the original support order, and in entering a modified order." *Shutter v. Reilly,* 372 Pa. Super. 251, 256, 539 A.2d 424, 426 (1988).

The relevant portion of 23 Pa.C.S. §4322, Support Guidelines, mandates that:

"The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the

ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." 23 Pa.C.S. §4322(a).

Furthermore, Pa.R.C.P. 1910.16-6 states in pertinent part:

"Rule 1910.16-6. Support guidelines. Adjustments to the basic support obligation. Allocation of additional expenses

"Additional expenses permitted pursuant to this Rule 1910.16-6 may be allocated between the parties even if the parties' incomes do not justify an order of basic support.

"(a) Child care expenses. *Reasonable child care expenses* paid by either parent, if necessary to maintain employment or appropriate education in pursuit of income, shall be allocated between the parties in proportion to their net incomes and added to his and her basic support obligation. . . ." Pa.R.C.P. 1910.16-6(a). (emphasis added)

In the instant case, while it was acknowledged that child care expenses were necessary for Father to maintain employment, we determined that the full cost of the au pair service was excessive and not a "reasonable" child care expense. Here, the cost of the au pair service of $678.58 bi-weekly, or $1,357.16 per month, included the following annual expenses for 2007-2008: "SEVIS"

extension $198; program fee $5,045; transportation $120; plan and service charge $200; tuition assistance $500; stipend $8,580; auto insurance $600; and room and board $2,400. Exhibit F-4.

We also determined that the cost of comparative child care provided by the Central Bucks Community School Before and After School Program within the community where Father resides was $490 per month for two children. Exhibit F-6. This is in marked contrast to the $1,357.16 per month that Father pays for his au pair service.

While the Central Bucks Community School program obviously does not provide assistance with laundry, shopping, errands, and housecleaning, this court concluded that it would be unreasonable and unjust to compel Mother to contribute to those additional household benefits and advantages which are provided by the au pair service. Accordingly, a more "reasonable" value of $500 per month for child care expenses was used in calculating the adjustment to Mother's share of the child support obligation, which was then determined to be $101.72.

Father appears to presume that Mother can be compelled to contribute to any and all child care expenses that Father incurs, regardless of the amount. He has cited no case law to substantiate his position, and this court has declined to effectuate such a result.

Father next asserts that this court "failed to give proper credit for [Mother's] income" and "failed to find [Mother's] income to be in the amount she represented to be her income under penalty of federal law in her

mortgage application and statement provided at settlement." Father in essence demands that this court utilize Mother's indicated earnings of $4,166 per month on her mortgage loan application, and/or his calculated estimate of $529 per night that Mother supposedly earns as a waitress at the Inn at Phillips Mill, as the true value of her income when calculating her support obligation. We have declined to do so.

The Superior Court of Pennsylvania has consistently declared that when the "the trial court sits as fact-finder, the weight to be assigned the testimony of the witnesses is within its exclusive province as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." *Stokes v. Gary Barbera Enterprises Inc.,* 783 A.2d 296, 297 (Pa. Super. 2001). See also, *Hoffman v. Hoffman,* 762 A.2d 766, 770 (Pa. Super. 2000), citing *McKolanis v. McKolanis,* 435 Pa. Super. 103, 105, 644 A.2d 1256, 1257 (1994) (assessment of the credibility of witnesses is within the province of the trial court).

In calculating support obligations, the Superior Court of Pennsylvania has also noted that:

"[A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. *Hoag v. Hoag,* 435 Pa. Super. 428, 646 A.2d 578 (1994). Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. See *DeMasi v. DeMasi,* 408 Pa. Super. 414, 597 A.2d 101 (1991). Earning capacity is defined as the amount that a person

realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history. *Gephart v. Gephart,* 764 A.2d 613 (Pa. Super. 2000)." *Woskob,* 843 A.2d at 1251.

In this case, it was this court's sole province to determine the credibility of the parties' testimony and arrive at a proper valuation of Mother's imputed income. Mother submitted two pay stubs for the pay periods December 10, 2007 to December 23, 2007, which reflected total earnings of $290.99 and tips of $151, and December 24, 2007 to January 6, 2008, which reflected earnings of $267.21 and tips of $249. Exhibit M-2. If Mother's income, in accordance with these pay stubs, is estimated to be approximately $500 every two weeks, her projected annual income is $13,000. This court also noted that Mother's Federal Income Tax Return Form 1040 for 2006 revealed adjusted gross income of $14,134.

If Father's "estimate" of $529 per night in tip income for Mother was used in calculating her support obligation, Mother, working part-time, four days per week, would have gross income of over $110,000 per year. This is clearly an unrealistic result unsupported by the evidence. By properly adhering to the Superior Court's directive to a trial court "to refrain from relying on hypothetical paper calculations and determine appellant's actual monthly income based on the reality of appellant's financial situation," *Fitzgerald v. Kempf,* 805 A.2d 529, 532 (Pa. Super. 2002), we declined to acknowledge the validity of Father's estimate which was based upon speculation and conjecture.

Similarly, Mother's declared gross income of $4,166 per month on her mortgage loan application results in an annual income of approximately $50,000. After carefully considering the circumstances surrounding the parties, as well as Mother's testimony concerning her income and employment as a waitress, we determined that this amount did not accurately reflect Mother's income or her present actual earning capacity.

Father asserts that this court erred in failing to utilize as the true amount of Mother's income the amount she declared upon her mortgage loan application. Although Mother misrepresented her income on the application in an effort to qualify for a specific loan amount, this court has no authority to, and indeed must not, perpetuate that misrepresentation.

This court does have, however, a responsibility to accurately determine Mother's support obligation based upon her actual financial resources and earning capacity. As a result, after recognizing that a person's support obligation is to be determined by his or her assessed earning capacity when the person "assumes a lower paying job or willfully fails to obtain appropriate employment," *Woskob,* 843 A.2d at 1254, this court imputed an annual income of $31,200 to Mother. This value was predicated upon the recognition that Mother was capable of full-time employment and assumed a 40-hour work week with a wage rate of $15 per hour, which is commensurate with wages for clerical functions similar to those Mother previously performed in her employment with the U.S. government.

In responding to Mother's complaints that this court "erred in entering an order of child support against Mother when Father waived his right to child support in the parties' property settlement agreement," and "erred by failing to consider Father's waiver of child support as a basis for deviating from the guidelines," we note that the Superior Court of Pennsylvania has consistently held that:

"[P]arents have a positive duty to provide care, control and subsistence for their children, as well as a duty to love, protect, and support the child. *Petition of Lutheran Children and Family Service of Eastern Pennsylvania,* 456 Pa. 429, 321 A.2d 618 (1974); *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa. Super. 32, 457 A.2d 98 (1983). This duty to support applies to *both* parents; both parents bear an equal responsibility for supporting their children in accordance with the capacity and ability of each to do so. *Shindel v. Leedom,* 350 Pa. Super. 274, 504 A.2d 353 (1986); *Fee v. Fee,* 344 Pa. Super. 276, 496 A.2d 793 (1985); *Sutliff v. Sutliff,* 339 Pa. Super. 523, 489 A.2d 764 (1985).

"Furthermore, it is well-settled that one parent cannot contract away the right of his or her child to seek adequate support from the other parent. *Hollman v. Hollman,* 347 Pa. Super. 289, 500 A.2d 837 (1985); *Abarbanel v. Weber,* 340 Pa. Super. 473, 490 A.2d 877 (1985); *Commonwealth ex rel. Shoemaker v. Coulson,* 355 Pa. Super. 626, 485 A.2d 70 (1984); *Oman v. Oman,* 333 Pa. Super. 356, 482 A.2d 606 (1984)." *Miesen v. Frank,* 361 Pa. Super. 204, 208, 522 A.2d 85, 87 (1987). (emphasis in original)

See also, *Commonwealth v. Cameron,* 197 Pa. Super. 403, 406, 179 A.2d 270, 272 (1962) (holding that "neither the mother nor anyone else can bargain away the right of a minor child to adequate support from her father"); *Kost v. Kost,* 757 A.2d 952, 954 (Pa. Super. 2000) (holding that the "[t]rial court correctly noted that neither party may bargain away a minor's child's right to adequate support"); *Leonard v. Leonard,* 353 Pa. Super. 604, 608, 510 A.2d 827, 829 (1986) (recognizing that "it has long been the rule in this jurisdiction that parents cannot bargain away the right of support for their children despite the validity and legality of the contract"); *Domestic Relations Section for Diehl v. Mulhern,* 406 Pa. Super. 422, 427-28, 594 A.2d 692, 695 (1991) (holding that "[t]he obligation of a parent to support his or her child is an unwavering one, and one parent will not be permitted to contract away the right of his or her child to seek support from the other parent").

This principle was reaffirmed by the Supreme Court of Pennsylvania in *Knorr v. Knorr,* 527 Pa. 83, 588 A.2d 503 (1991) when it held that:

"Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981). They have no power, however, to bargain away the rights of their children, *Sonder v. Sonder,* [378 Pa. Super. 474, 549 A.2d 155 (1988)]. Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be

given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest." *Id.* at 86, 588 A.2d at 505.

The Superior Court recently relied upon *Knorr* in *Kraisinger v. Kraisinger,* 928 A.2d 333 (Pa. Super. 2007) when it invalidated a provision in a marriage settlement agreement waiving a wife's right to seek additional child support in exchange for part of an equitable distribution award, after concluding "it left the children without sufficient support." *Id.* at 341.

We are, however, also aware that the Superior Court will enforce a child support agreement "in which one parent releases the other from the duty of support . . . so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved." *Roberts v. Furst,* 385 Pa. Super. 530, 532, 561 A.2d 802, 803 (1989) (citing *Commonwealth v. Cameron,* 197 Pa. Super. 403, 179 A.2d 270 (1962)).

Here, Mother and Father signed a "property settlement agreement" on July 26, 2006, in which Father, pursuant to paragraph 15 (Support) "agrees to waive child support from [Mother] for the parties' minor children." Exhibit M-1. While the drafters of this agreement apparently attempted to circumvent the impropriety of waiving child support by further declaring that "[t]his waiver is not to be interpreted as Husband (Father) waiving the children's right to child support; rather the waiver is due to contents (sic) of this agreement and Wife (Mother) waiving payments she may be entitled to with regard to alimony and Husband's pension," the plain and unmistakable intent

of this provision was to relieve Mother of her obligation to provide child support. Mother apparently bargained away any right to alimony and a portion of Father's pension in exchange for Father's relieving Mother of her duty to pay child support.

While such an agreement might have been enforceable if it arguably did not prejudice the welfare of the children, there is nothing in the language of this provision to suggest that the welfare of the children was protected in Mother's bargained-for relief from providing child support. Therefore, this provision is unenforceable and contrary to public policy.

We note parenthetically that *Roberts* and *Furst, supra,* which upheld similar waiver of child support provisions, are distinguished from the case sub judice in that they involved third-party stepparents who assumed via written agreements the status of in loco parentis to the children. In each case, the Superior Court held that the agreements were enforceable after reasoning that the mother and stepfather were able to adequately support the children, but cautioned that should they become financially unable to support the children, or should "the cost of maintenance of the children become a burden on the public," the natural father's "obligation to contribute to their support" would resume. *Roberts,* 385 Pa. Super. at 534, 561 A.2d at 804; *Cameron,* 197 Pa. Super. at 209, 179 A.2d at 273. See also, *Klein v. Sarubin,* 324 Pa. Super. 363, 471 A.2d 881 (1984) (finding no error in trial court's refusal to recognize that mother's second husband had assumed the status of in loco parentis to the children, which would have relieved father of his legal support obligation, because inter alia neither mother nor

second husband had executed an agreement releasing father from his support obligation). Here, there is no suggestion that the children have been adequately provided for via a written agreement with a third party stepparent who has assumed Mother's obligations of child support.

Based upon the foregoing discussion and an overriding awareness that "both parents bear an equal responsibility for supporting their children in accordance with the capacity and ability of each to do so," *Miesen, supra,* we concluded that Mother was not relieved of her obligation to contribute to her children's support, despite the child support waiver in the property settlement agreement. We also concluded that Mother was underemployed working only part-time, and therefore in accordance with *Woskob, supra* ("where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity"), this court assessed Mother's annual earning capacity at $31,200, which resulted in her present child support obligation of $608 per month.

We also note parenthetically that while the property settlement agreement between Mother and Father was inartfully drawn, Father intended to clearly convey to Mother that she would not be responsible for child support if she waived her right to alimony and to share in Father's government pension. Mother apparently believed that Father was a man of his word and that this property settlement agreement was enforceable. She was wrong in both assumptions.

Because we believe that the "waiver of support" provision in paragraph 15 of the property settlement agreement was not enforceable, Mother's assertion that this court erred in failing to consider it in determining Mother's support obligation is without merit.

Mother's final assertion that this court "erred in assigning an earning capacity to [Mother] that is unsupported by the evidence of record" has been previously addressed. This court determined from the evidence presented at the hearing that Mother was underemployed, and consequently assessed her an annual earning capacity of $31,200 in compliance with 23 Pa.C.S. §4322(a) and *Woskob, supra.*

We believe the foregoing discussion addresses the issues raised by both parties.